**FILED**

JAN 03 2011

DAVID CREWS, CLERK
By⎯⎯⎯⎯⎯⎯⎯
Deputy

## IN THE UNITED DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**PINNACLE TRUST COMPANY, EXECUTOR**
**OF THE ESTATE OF JIMMY SISK, DECEASED**                        **PLAINTIFF**

**VERSUS**                                   **CIVIL ACTION NO.** _1:11CV2-A D_

**BABCOCK & WILCOX POWER GENERATION GROUP, INC.,**
**LINCOLN ELECTRIC CO.; LINDE, LLC.; THE ESAB GROUP, INC.;**
**HOBART BROTHERS COMPANY;**
**TDY INDUSTRIES, INC. f/k/a TELEDYNE INDUSTRIES. INC.: and**
**UNION CARBIDE CHEMICALS AND**
**PLASTIC COMPANY, INC.**                              **DEFENDANTS**

### COMPLAINT  (Jury Trial Requested)

Plaintiff, Pinnacle Trust Company, by and through its attorneys, files this Complaint against the Defendants, for (1) the personal injuries and death suffered by Jimmy Sisk, deceased as a result of Defendants' manufacture and/or sale of defective welding consumables, and (2) the claims of the heirs at law and wrongful death beneficiaries of Jimmy Sisk, deceased, as a result of said Sisk's personal injuries.

### PARTIES

1.      Plaintiff, Pinnacle Trust Company, is a trust company organized and existing under and by virtue of the laws of the state of Mississippi and being domiciled and having its principal place of business at 101 Port St., Madison, MS 39110.  Pinnacle

order of the Chancery Court of Webster, County, Mississippi in cause number 2009-156

and Pinnacle Trust Company files this complaint in its capacity as executor of the estate

of Jimmy Sisk.

    2.    The Defendants and their addresses are:

A.    Defendant LINDE, LLC., a non-resident limited liability company organized and existing under and by virtue of the laws of the State of Delaware, but which is qualified to do business and doing business in the State of Mississippi, having as its registered agent for service of process, Corporation Service Company, 506 S. President Street, Jackson, Mississippi 39201;

B.    Defendant THE ESAB GROUP, INC., a non-resident corporation organized and existing under and by virtue of the laws of the State of Delaware, having as its registered agent for service of process CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232

C.    Defendant HOBART BROTHERS COMPANY, a non-resident corporation organized and existing under and by virtue of the laws of the State of Ohio, having as its registered agent for service of process C.T. Corporation System, 1300 East 9th Street, Cleveland, Ohio, 44114.

D.    Defendant THE LINCOLN ELECTRIC COMPANY, a non-resident corporation organized and existing under the laws of the State of Ohio, having as its registered agent for service of process Frederick G. Stueber, 22801 St. Clair Avenue, Cleveland, Ohio, 44117.

E.    Defendant TDY INDUSTRIES, INC. f/k/a TELEDYNE INDUSTRIES, INC., a non-resident corporation organized and existing under and by virtue of the laws of State of California, but which is qualified to do business and doing business in the State of Mississippi, having as its registered agent for service of process CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

F.    Defendant UNION CARBIDE CHEMICALS AND PLASTIC COMPANY, INC., formerly d/b/a LINDE, a non-resident corporation organized and existing under and by virtue of the laws of the State of New York, having as its registered agent for service of process, CT Corporation System, 645 Lakeland East Dr., Suite 101, Flowood, MS 39232

G.      Defendant, BABCOCK & WILCOX POWER GENERATION GROUP, INC. is a nonresident Corporation organized and existing under and by virtue law the state of Delaware whose registered agent for service of process is CT Corporation System, 645 Lakeland East Dr., Suite 101, Flowood, MS 39232.

*(hereinafter referred to as Defendants).*

## JURISDICTION

3.    a.      The plaintiff, Pinnacle Trust Company, is a trust company organized under and by virtue the laws of the state of Mississippi with its principal place of business at 101 Port St., Madison, MS 39110.

b.      defendant, Linde LLC is a limited liability company existing under the laws of Delaware with its principal place of business in New Jersey;

c.      defendant, the ESAB Group, Inc. is a corporation existing under the laws of the state of Delaware and having its principal place of business in South Carolina;

d.      defendant, Hobart Brothers Company is a corporation incorporated under the laws of Ohio with its principal place of business in Ohio;

e.      defendant, The Lincoln Electric Company is a corporation incorporated under the laws of Ohio with its principal place of business in Ohio;

f.      defendant, TDY Industries, Inc. is a corporation incorporated under the laws of California and with its principal place of business in Pennsylvania;

g.      defendant, Union Carbide Company is a Corporation organized under the laws of New York with its principal place of business in Connecticut; and

h.      defendant, Babcock & Wilcox Power Generation Group, Inc. is a corporation incorporated under the laws of the state of Delaware and having its principal place of business in Ohio.

i.      The amount in controversy, without interest and costs, exceeds the sum or value of $75,000 specified in 28 U. S. C. §1332 and there is complete diversity of citizenship.

## VENUE

4.      Pursuant to 28 U. S. C. § 1391(a) venue is proper in this District Court because the cause of action alleged in this complaint occurred and/or accrued in Clay County, Mississippi, which is located within the Eastern Division of this District Court.

## JOINDER

5.      Defendants may be properly joined in this action based on plaintiff's assertions against them jointly, severally, or in the alternative, any and all rights to relief in respect of, or rising out of the same transactions, occurrences, or series of transactions or occurrences and questions of law or fact, and all of them will arise in this action. Each defendant need not be interested in defending against all of the relief demanded. Judgment may be given against one or more of the defendants according to their respective liabilities. This civil action is brought pursuant to, among other things, the laws of the state of Mississippi, including but not limited to§11-1-63, Miss. Code Ann. (1972) (Product Liability).

## DEFENDANTS

6.      The defendants were sued in their present corporate name, although some defendants are successors in interest, mere continuation or corporate reincarnations of predecessor entities engaged in the manufacture and/or sale of manganese containing welding consumables and hexavalent chromium compound consumables while other defendants have been acquired or purchased by other entities, corporate re-organization, and merger, other

4

entities which manufactured and/or sold manganese containing welding consumables and hexavalent chromium compound consumables which plaintiff's decedent used. This action is therefore directed not only against these defendants in their present name, but against all predecessors in interest or acquired entities of the defendants both known and, at present, unknown which manufactured manganese containing welding consumables and hexavalent chromium compound consumables which proximally caused the injury and death of Jimmy Sisk, plaintiff's decedent.

7.      Defendants are foreign proprietorships, partnerships, limited partnerships, limited liability partnerships, or corporations existing but under and by virtue the laws of the states other than the state of Mississippi, which obtained certificates of authority to transact business in Mississippi; or foreign proprietorships, partnerships, limited partnerships, limited liability partnerships, or corporations existing under and by virtue of the laws of the states other than the state of Mississippi which have transacted business in Mississippi without a certificate of authority and have committed a tort in whole or in part within the state of Mississippi within the intention and meaning of Mississippi Code Annotated §13-3-57.

## PRODUCT EXPOSURE

8.      Plaintiff deceased, Jimmie Sisk, was a resident of Webster County and welded in Clay County from shortly after he graduated from high school until his diagnosis of lung cancer. For approximately 15 years prior to and continuing until December 2007 Sisk was exposed to welding rod fumes during his employment at Babcock & Wilcox in Clay County, Mississippi, which was the primary employer for whom Sisk worked from the time he graduated high school until he was diagnosed with lung cancer.

9.      On information and belief, Sisk welded with Linde, Lincoln, ESAB and Murex

rods and wires and others at Babcock & Wilcox in West Point, Mississippi. Plaintiff's counsel

has diligently attempted to ascertain the name of the manufacturers of welding consumables used

by Sisk during his employment at Babcock and Wilcox and will continue to do so.

10.     In addition to using welding rods during his employment at Babcock & Wilcox

Sisk also used wire in TIG (tungsten inert gas) welding.

11.     During his employment at Babcock & Wilcox Sisk was exposed to hexavalent

chromium compounds in the welding process.

12.     On January 3, 2008 Sisk was diagnosed with lung cancer for which he received

chemotherapy and radiation treatments and surgery which were not successful and on September

3, 2008 Sisk died as a result of his cancer.

## FACTUAL ALLEGATIONS

13.     Sisk was engaged in the employment as a welder from the time of his graduation

from high school until he became ill with lung cancer. During his welding career Sisk was

exposed to welding consumables which contains manganese and hexavalent chromium.

14.     Defendants, except Babcock & Wilcox, manufacture and/or sale welding rods and

welding wire containing manganese and hexavalent chromium compounds in the welding

consumables.

15.     When they are used in the ordinary manner and as intended manganese and

hexavalent chromium welding consumables give off fumes, particles and gases which contain,

*inter alia* manganese and hexavalent chromium.

16.     Manganese and/or hexavalent chromium containing fumes, particles and gases

can be taken and absorbed into the body through, *inter alia,* inhalation and ingestion.

17.     Persons, including plaintiff's decedent, Sisk, who weld or those who are in the

proximity of persons who are welding are thus exposed to, take in and absorb manganese containing fumes and hexavalent chromium fumes, particles and gases.

18.    Hexavalent chromium compounds have long been known to the defendants as a toxin posing serious health hazards and causing a variety of serious injuries, including but not limited to, lung cancer.

19.    As a result of his exposure to hexavalent chromium and manganese from defendants' welding consumables Sisk contracted lung cancer from which he died.

20.    Such knowledge of the health hazards of manganese and/or hexavalent chromium compounds were known and knowledgeable to the defendants, without limitation through:

    A.    Scientific/medical/trade literature;

    B.    Their participation in the National Electrical Manufactures Association (NEMA) and its various committees and subcommittees;

    C.    Their participation in the American Welding Society (AWS) and its various committees and subcommittees;

    D.    Their participation in the American National Standards Institute (ANSI) and it's various committees and subcommittees;

    E.    Their insuers;  and

    F.    Product research and testing.

21.    Defendants, however, failed to adequately convey this knowledge of the health hazards of manganese and hexavalent chromium to persons who weld and persons who are in the proximity of persons who are welding.

22.    Further, defendants took affirmative and intentional steps, individually and collectively through NEMA, AWS and ANSE, to withhold, suppress and/or misrepresent this knowledge of the health hazards of manganese and hexavalent chromium to persons who weld and persons in the proximity of those who weld.

23.     Similarly, ways to minimize avoid and/or eliminate exposure to manganese and/or hexavalent chromium fumes, particles and gases to persons who weld and persons who are in the proximity of a person who is welding have long been known and that information should have been known by the defendants.

24.     Such knowledge was known and knowable to the defendants, without limitation, through:

A.     The scientific/medical literature;

B.     Their participation in National Electrical Manufacturers Association (NEMA) and its various committees and subcommittees;

C.     Their participation in the American Welding Society (AWS) and its various committees and subcommittees;

D.     Their participation in American National Standards Institute (ANSI) and its various committees and subcommittees;

E.     Their insurers; and

F.     Product research and testing.

25.     Defendants, however, failed to adequately convey to persons who weld and persons who are in the proximity of persons who weld ways to minimize, avoid and/or eliminate exposure to manganese fumes and hexavalent chromium fumes.

26.     Further, defendants took affirmative and intentional steps, individually and collectively through NEMA, AWS and ANSI, to withhold, suppress and/or misrepresent information concerning ways to minimize, avoid and/or eliminate exposure to manganese containing fumes, particles and gases and hexavalent chromium fumes, particles and gases.

27.     Each act or omission complained of herein was committed by officers, managers, supervisors, agents, servants, authorized representatives or employees acting in the course and scope of their duties for and/or with full authority from each represented defendant, and/or each

such act or omission was later ratified, approved and adopted by each represented defendant.

## CAUSES OF ACTION

## COUNT I

## PRODUCT LIABILITY--FAILURE TO WARN

28     Plaintiff realleges, as if fully set forth, each and every allegation contained in paragraphs 1 to 27 of this complaint, and further alleges:

29.     Defendants engaged in the manufacture and or sale of welding consumables, which were expected to and did reach consumers in the state of Mississippi, including Sisk, without substantial change in their condition.

30.     At the time the welding consumables left the control of the manufacturing defendants they knew, or relying upon reasonable available knowledge should have known, about the health hazards of welding consumables, and that an ordinary user of their welding consumables would not realize the unreasonably dangerous condition of said welding consumable.

31.     The health hazards posed by defendants' welding consumables were neither known nor open and obvious to plaintiff's decedent, Jimmy Sisk, and moreover the health hazards could not have been known to or were not open and obvious to users of said welding consumables, taking into account the characteristics of, and the ordinary knowledge common of persons who ordinarily use welding consumables.

32.     Defendants' welding consumables were defective because:

      A.     They failed to contain adequate warnings or instructions regarding the health hazards posed by welding fumes, particles and gases from welding consumables when said welding consumables are used for the reasonable and foreseeable and intended purposes;

B.    They failed to contain adequate warnings or instructions regarding what ventilation, safety equipment or other precautionary measures should be taken to avoid the health hazards posed by welding fumes, particles and gases from welding consumables when said welding consumables were used for their reasonably foreseeable and intended purpose;

C.    They failed the test or investigate the health hazards associated with product;

D.    They knew or should have known of the dangers and that the warnings did not allow Sisk to use the products safely;

E.    The design of the welding consumables does not protect the user from exposure to the harmful fumes, gases and particles;

F.    The warning, if any, on the welding consumables failed to sufficiently warn about the dangers of the welding consumables and did not adequately instruct as to how to use the product safely;

G.    They failed to furnish adequate instructions as to the safe use of the welding consumables; and/or

H.    Such other acts of negligence and omissions as will be developed during discovery.

33.    The failure to contain adequate warnings or instructions rendered the defendants' welding consumables unreasonably dangerous to Sisk.

34    The defective and unreasonably dangerous condition of defendant's welding consumables proximately caused Jimmy Sisk to develop lung cancer from which he died.

35.    The manufacture and sale of such defective and unreasonably dangerous welding consumables by defendants was done willfully and maliciously and/or undertaken in gross, reckless disregard for the rights of Sisk.

36.    Plaintiff is entitled to be awarded compensatory and punitive damages from the defendants.

## COUNT II

## NEGLIGENCE

37.    Plaintiff realleges, as if fully set forth, the allegation of each paragraph contained

in paragraphs numbered 1 to 36 of this complaint, and further alleges:

38.    Defendants owed a duty to Sisk to exercise reasonable care in the designing,

testing, manufacture and sale of the welding consumables.

39.    Defendants breached their duties, without limitation, by the following acts or

omissions:

A.    The design, manufacture and sale of welding consumables which poses health hazards to person who weld and persons who are in the proximity of persons who weld;

B.    The failure to adequately test welding consumables to determine the nature and extent of health hazards to person who weld and persons who are in the proximity of persons who weld;

C.    The failure to issue adequate warnings of the health hazards posed by welding consumables to person who weld and persons who are in the proximity of persons who weld;

D.    The failure to issue adequate instructions as to how to minimize, avoid and/or eliminate the health hazards posed by welding consumables to the person who welds and persons in the proximity of persons who weld;

E.    The failure to design, test, manufacture and sell welding consumables which would have minimized, avoided or eliminated the health hazards to persons who weld and persons who are in the proximity of persons who weld;

F.    Otherwise exercise due care under the circumstances; and

G.    Such other acts of negligence as may be developed during discovery.

40.    Defendants breaches of these duties proximately caused or contributed to the

death of Jimmy Sisk.

41.     Defendants breaches of these duties was done willfully and maliciously and/or undertaken in gross, reckless disregard for the rights of Jimmy Sisk.

42.     Plaintiff is entitled to an award of compensatory and punitive damages from the defendants.

## COUNT III

## CONSPIRACY

43.     Plaintiff realleges, as if fully set forth, each and every allegation contained in paragraphs 1 through 42 of this complaint and further alleges:

44.     During the entire period in which the defendants knew of the causal relationship between the various diseases and exposure to manganese welding rods and hexavalent chromium compounds, the defendants continually, intentionally, systematically, and fraudulently suppressed and misrepresented the facts and completely failed to mention to Sisk and the others using such products that exposure to such products could cause disease among those using such products and, prompted by pecuniary and selfish motive, individually and in conspiracy with others and through trade associations in which they were a member, deliberately, maliciously, and callously agreed and conspired among themselves and with other manufacturers and distributors and other in the industry to injure the plaintiff by:

        A.     Concealing and/or withholding medical and scientific information;

        B.     Misstating and misrepresenting material facts about the seriousness of welding fume diseases;

        C.     Concealing information relative to the dangers posed by the welding products from persons who were exposed to the inhalation of toxic welding fumes from welding rods and wire made, sold, and or distributed by defendants, figuring the adverse publicity would reduce the highly profitable sales;

        D.     Concealing the results of research on disease and test done on the products

because they were adverse, and distorting said results to mislead persons into believing that they were not adverse and were in fact safe by deleting material information from studies and reports;

E.    Disseminating misleading information;

F.    Preventing disclosure of medical and scientific information, including altering of studies and reports; terminating studies that would prove unfavorable to the defendant; and discrediting doctors and scientists who indicated that there is a relationship between welding fumes and disease;

G.    Concealing claims of persons who contracted welding fume diseases;

H.    Placing misleading information on the containers and packaging of welding rods, wires, and welding consumables saying that adequate warnings would adversely affect sales;

I.    Disseminating favorable publicity about their welding rods indicating they were safe for use in order to make a nice profit while sacrificing human life; and

J.    The defendant conduct towards Sisk was willful and intentional in suppression of the risks of injuries from exposure to welding fumes, as well as other related acts and omissions, constituted fraudulent concealment and/or fraudulent misrepresentation which proximately caused injury to Sisk. Defendants acts and omissions amounted to a total disregard of the rights of Sisk and constitute civil conspiracy as defined by law.

45.    Defendants' conspiracy includes communications to deceive the public, including

Sisk, as to the dangers involved in the use of defendants' welding rods and consumables.

## COUNT IV

## DECEPTIVE ADVERTISING

46.    Plaintiff realleges, as if fully set forth, each and every allegation contained in

paragraphs 1 to 45 of this complaint, and further alleges:

47.    The defendants are welding consumable manufacturers, distributors and sellers,

that all pertinent times manufactured, tested, designed, promoted, marketed, packaged, sold,

distributed and/or placed into the stream of commerce and into the State of Mississippi numerous

brands and types of defective, unreasonably dangerous and hazardous welding consumables.

48    At all relevant times, the defendants purposely, deliberately and with reckless disregard for the rights, safety, health and welfare of persons who weld and persons who are in the proximity of persons who weld, the public, including the plaintiff's deceased, Jimmy Sisk, engaged in these activities and continue to do so, knowing full well that when persons using the welding consumables as they were intended to be used, such persons would be substantially certain to be exposed to injury causing fumes which the defendants knew were likely to cause injury and disease, including but not limited to, lung cancer and other illnesses. The defendants purposely, deliberately, and with reckless disregard for the rights, safety and health of persons who weld and persons who are in the proximity of persons who weld, including Sisk, marketed and sold their defective and dangerous welding consumables to the public, including Sisk and his employers, and the defendants knew or reasonably should have known that Sisk and others similarly situated would be injured thereby.

49.    The defendants collectively manufactured and sold or aided and abetted in the sale of welding consumables containing manganese, hexavalent chromium and other harmful elements, which welding consumables were and are defective and unreasonably dangerous as a result of the lack of adequate warnings and/or the inclusion of an adequate and effective warnings on the welding consumable packaging, and the unreasonably dangerous defects existed at the time the welding consumables left the defendants' hands.

50.    In all pertinent times, the defendants knew, or should have known, that exposure to the fumes created by the use of their welding consumables was and is hazardous to human health, and that their welding consumables were and are unreasonably dangerous to persons who weld and persons who are in the proximity of those who weld and are exposed to these fumes.

51.     As a direct and proximate result of the defective design, testing, manufacturing, marketing, and the defective, inadequate, or absent warnings on the part of these defendants, the aforesaid welding consumables were and are defective and unreasonably dangers.

52.     The aforesaid welding consumables reached the welders and bystanders in substantially the same condition that they were in when originally manufactured, distributed and sold by these defendants. At the time the aforesaid welding consumables were sold or placed on the market, they were in a defective condition, unreasonably dangers to welders and bystanders in the vicinity of the welders.

53.     The defective condition of the aforesaid welding consumables directly and proximately caused Sisk to suffer lung cancer and other injuries and damages and directly and proximately caused Sisk to incur medical and healthcare expenses for his treatment.

54.     At all pertinent times it was foreseeable by the defendants that persons who weld and persons who are in the proximity of those who weld, including Sisk and others similarly situated, who use the defendants' welding consumables would become ill and suffer injury, disease and sickness as a result of using the welding consumables as the defendants intended, and it was further foreseeable by these defendants that Sisk would be required to incur expenses for medical treatment and healthcare.

55.     Specifically, and in addition to the allegations above, the defendants knew of the hazards associated with exposure to fumes created by welding; they affirmatively and actively concealed information which clearly demonstrated the danger of exposure to welding fumes, and affirmatively misled Sisk and refused to adequately warn with regard to the material and clear risk associated with exposure to welding fumes; the defendants did so with the intent that Sisk and/or his employers would continue to purchase the defendants' welding consumables; the

defendants knew that welders and bystanders, including Sisk would not be in a position to know the true risk associated with exposure to welding fumes and they also well knew that welders, including Sisk would rely upon the misleading information and defective warnings that defendants promulgated.

56.     In all pertinent times, the defendants purposely, intentionally, and with reckless disregard for the rights, safety, health and welfare of others, engaged in the activities of advertising, promoting, marketing and selling their defectively designed welding consumables, and continue to do so, knowing full well that when welders use their welding consumables as those consumables were and are intended to be used, that welders, including Sisk and others similarly situated, would be substantially certain to suffer injury and sickness, including, but not limited to, lung cancer and death.

57.     The public statements, representations, and the inadequate, defective and/or absent warnings were defective, false, incomplete, misleading, wholly inaccurate, and in violation of Miss.Code Ann. §§97-23-1 and 97-23-3. The defendants knew or should have known, those said statements, representations, and the inadequate, defective and/or absent warnings were defective, false, incomplete, misleading and wholly inaccurate at the time of making such statements. The defendants had and have an economic interest in making such statements. Jimmy Sisk and others who purchased and used the defendants' welding consumables had no knowledge of the falsity, untruth, or misleading nature of said statements, misrepresentations, and defective warnings when they purchased the aforesaid consumables; moreover, these individuals, including Sisk had a right to rely on such statements and representations. Further, Sisk had a right to expect these defendants to adequately, fully and completely warn him of any and all dangers associated with the use of the defendants' products.

Each of said statements, representations and defective warnings were material to those individuals, including Sisk, who purchased and/or used the aforesaid consumables and that the Sisk would not have purchased and/or used the aforesaid consumables if he had known that such statements, representations, and warnings were deceptive, false, incomplete, misleading and wholly inaccurate.

58    Sisk had a right to rely upon the representations of the defendants and he was directly and proximately injured by such reliance.

59.    In perpetrating the acts and omissions alleged in this complaint, the defendants acted with malice and gross negligence, with willful, wanton or reckless disregard for the rights, safety, health and welfare of others, and/or committed actual fraud.

## COUNT V

## FRAUDULENT MISREPRESENTATIONS

60.    Plaintiff realleges, as if fully set forth, each and every allegation contained in paragraphs 1 through 59 of this complaint, and further alleges:

61.    Defendants were under a duty to Sisk to be truthful and complete in all representations made to him concerning their welding consumables.

62.    Defendants breached these duties, without limitation, by the following acts or omissions:

    A.    Defendants made representations to the Sisk that were false;

    B.    The representations were material in that they influenced Sisk to use the defendants' welding consumables;

    C.    The misrepresentations were made by defendants by virtue of defendants' placement of warnings on their products that did not fully disclose to Sisk the dangers and adverse health effects associated with the use of their products in the manner in which they were designed to be used;

D.   The misrepresentations were made by the defendants by virtue of defendants' placement of language in their Material Safety Data Sheets that fraudulently misrepresented the dangers and adverse health effects associated with the use of their products in the manner in which they were designed to be used;

E.   All of the defendants' representations and misrepresentations were false and/or defendants had no basis for believing the same to be true;

F.   Defendants knowingly intended that Sisk take action based upon the representations and misrepresentations in the manner reasonably contemplated and that Sisk did not know that the representations were false; and

G.   Defendants knew or should have known that Sisk would rely upon the representations as being true and that Sisk was entitled to rely upon any and all representations made by the defendants.

63.   Defendants breach of these duties proximately caused and contributed to the injury and death of Sisk.

64.   Defendants breach of these duties were done willfully and maliciously and/or undertaken in gross, reckless disregard for the rights of Jimmy Sisk.

65   Plaintiff is entitled to an award of compensatory and punitive damages from the defendants.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

66.   Plaintiff realleges, as if fully set forth, each and every allegation contained in paragraphs 1 to 65 of this complaint, and further alleges:

67.   Defendants were under a duty to Sisk to be truthful and complete in all representations made to Sisk concerning their welding consumables.

68.   Defendants breached these duties, without limitation, by the following acts or

omissions:

      A.     Defendants made representations to Sisk that were false and/or omitted facts material to Sisk;

      B.     The representations and/or omissions of facts were material in that they influenced Sisk to use the defendants' welding consumables;

      C.     The misrepresentations or omissions of facts were made by defendants by virtue of defendants' placement of warnings on their products that did not fully disclose to Sisk the dangers and adverse health effects associated with the use of their products in the manner in which they were designed to be used;

      D.     The representations or omissions of facts were made by defendants by virtue of the defendants' placement of language on their Material Safety Data Sheets that fraudulently misrepresented or omitted the fact that of the dangers and adverse health effects associated with the use of their products in the manner in which they were designed to be used;

      E.     All of the defendants' representations and misrepresentations or omissions of facts were false and/or defendants had no basis for believing the same to be true;

      F.     Defendants knowingly intended that Sisk take action based upon the representations, misrepresentations and/or omissions of facts in the manner reasonably contemplated and that Sisk did not know that same were false; and

      G.     Defendants knew or should have known that Sisk would rely upon the representations as being true and that Sisk was entitled to rely upon any and all representations made by the defendants.

69.    Defendants' breaches of these duties proximately caused and contributed to Sisk's injury and death.

70.    Defendants' breaches of these duties were done willfully and maliciously and/or undertaken in gross, reckless disregard for the rights of Sisk.

71.    Plaintiff is entitled to an award of compensatory and punitive damages from the defendants.

## COUNT VII

## LIABILITY OF BABCOCK AND WILCOX

72.    Plaintiff realleges, as if fully set forth, each and every allegation contained in paragraphs 1 to 71 of this complaint, and further alleges:

73.    Plaintiff's deceased, Jimmie Sisk, was an employee of Babcock & Wilcox for approximately 15 years. During the time of his employment he was a welder using various welding consumables including but not limited to TIG (tungsten inert gas) wire which has as a byproduct toxic gases, fumes and particles, all of which posed a danger to the health of Sisk. As a welder for Babcock & Wilcox he used consumables which contained hexavalent chromium compounds which are known carcinogens, exposure to which can cause lung cancer.

74.    Babcock & Wilcox, through its officers, directors and management personnel knew, or should have known, that welders such as Sisk using hexavalent chromium compounds were at a substantially increased risk of developing lung cancer. Babcock & Wilcox also knew, or should have known, that there were respirators and/or breathing apparatuses available in the market which welders could use to prevent inhaling the toxic gases, fumes and particles which are a byproduct of welding. Notwithstanding this knowledge Babcock and Wilcox refused to provide Sisk and other welders with adequate respirators and breathing apparatuses to prevent the inhalation of the toxic fumes. Babcock & Wilcox also knew that refusing to provide Sisk with adequate respirators and breathing apparatuses would more likely than not lead to serious illness, including lung cancer and death. However, notwithstanding this knowledge Babcock and Wilcox, placing profits before the safety of Sisk and other welders, made a deliberate and conscious decision to provide Sisk and others will breathing devices which were inadequate to prevent the toxic gases and vapors from being inhaled by Sisk.

75.     Babcock & Wilcox knew that by refusing to provide Sisk with adequate safety equipment, which was available on the market, to prevent the inhalation of toxic fumes, gases and particles that Sisk would in all probability develop lung cancer and die. Notwithstanding this knowledge and its failure to provide proper safety equipment Babcock & Wilcox evidenced intent to cause injury and death to Sisk.

76.     The knowledge of the health hazards of hexavalent chromium compounds were known and knowledgeable to Babcock and Wilcox, without limitation through:

      A.     Scientific, medical, trade literature;

      B,     Its participation in the National Electrical Manufactures Association (NEMA) and its various committees and subcommittees;

      C.     Its participation in the American Welding Society (AWS) and its various committees and subcommittees;

      D.     Its participation in the American National Standards Institute (ANSI) and its various committees and subcommittees;

      E.     Product research and testing; and

      F.     Material Safety Data Sheets published for welding consumables.

77.     On information and belief, plaintiff alleges that at least one supervisor at Babcock & Wilcox was fired for insisting that the company purchase and provide adequate safety equipment to its welders to prevent the inhalation of the toxic fumes, gases and particles.

78.     Because of the deliberate and calculated conduct of Babcock & Wilcox in refusing to provide Sisk with proper safety equipment which caused or contributed to Sisk developing cancer from which he died, the exclusive remedy of the Mississippi Worker's Compensation Act is inapplicable.

79.     Plaintiff is entitled to be awarded compensatory and punitive damages from Babcock & Wilcox.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, plaintiff requests the following relief:

Entry of judgment against the defendants, jointly and severally awarding plaintiff:

A.  All compensatory damages to which Jimmy Sisk would be entitled, including but not limited to, his pain and suffering, loss of enjoyment of life, and lost wages reduced to present net cash value;

B.  All compensatory damages to which the wrongful death beneficiaries and the heirs at law of Jimmy Sisk are entitled;

C.  Medical expenses incurred by Jimmy Sisk for his treatment of cancer;

D.  Funeral expenses and grave marker;

E.  Pre-judgment and post-judgment interest;

F.  All costs of these proceedings, including reasonable attorney fees; and,

G.  Such other relief, general or special which the court finds to be just and appropriate.

Respectfully submitted,

Pinnacle Trust Company, Executor, Plaintiff

BY: _____
John W Christopher
Attorney for Plaintiff


John W Christopher, MSB # 6100
Attorney at Law
750 Avignon Dr., Suite 3 (39157)
PO Box 982
Ridgeland, MS 39158
Telephone: (601) 898-3303
Facsimile: (601) 898-3306
jchristopher@jchristopherlaw.com