IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

PINNACLE TRUST COMPANY, EXECUTOR
OF THE ESTATE OF JIMMY SISK, DECEASED                                PLAINTIFF

V.                                                    CAUSE NO.: 1:11CV02-SA-SAA

BABCOCK & WILCOX POWER
GENERATION GROUP, INC.                                                DEFENDANT

MEMORANDUM OPINION

     Pinnacle Trust Company filed suit for the alleged personal injury and wrongful death of Jimmy Sisk, contending that exposure to hexavalent chromium compounds in the welding process caused his small cell lung cancer. Suit was originally brought against entities engaged in the manufacture and sale of hexavalent chromium compound welding consumable, as well as Sisk's former employer, Babcock & Wilcox Power Generation Group (B&W). As the suit has progressed, those entities for which Plaintiff's product liability claims were brought have been dismissed, and the only remaining claim is against B&W. B&W now seeks summary judgment on the basis that Plaintiff's claims are precluded by the Mississippi Workers' Compensation Act (MWCA), or alternatively, that Plaintiff's claims are barred by the statute of limitations. Because Plaintiff's claims are precluded by the exclusivity provision of the MWCA, summary judgment is GRANTED.

*Factual and Procedural Background*

     Jimmy Sisk began his employment with B&W in 1989. He worked there continuously until his diagnosis of lung cancer in 2007. During his employment, Sisk was exposed to welding rod fumes, specifically hexavalent chromium, from which Plaintiff claims Sisk contracted lung cancer and died. Plaintiff contends that B&W either "knew, or should have known, that welders

such as Sisk using hexavalent chromium compounds were at a substantially increased risk of developing lung cancer." Plaintiff further argues that B&W knew or should have known that respirators were available in the market which welders could have used to prevent inhaling the toxic fumes; however, Plaintiff argues that B&W "refused to provide Sisk and other welders with adequate respirators and breathing apparatuses to prevent the inhalation of the toxic fumes." Further, Plaintiff states that B&W recognized that their refusal to provide respirators "would more likely than not lead to serious illness, including lung cancer and death." "Because of the deliberate and calculated conduct of Babcock & Wilcox in refusing to provide Sisk with proper safety equipment which caused or contributed to Sisk developing cancer from which he died, the exclusive remedy of the Mississippi Worker's [sic] Compensation Act is inapplicable."

B&W contends that summary judgment is appropriate because the Mississippi Workers' Compensation Act is applicable because Plaintiff has not shown B&W to have an "actual intent to injure" Sisk. Alternatively, B&W argues that if Plaintiff's claims are outside the MWCA, they must be intentional torts, for which there is a one year statute of limitations, which Plaintiff did not meet in filing this suit.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

2

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The court is only obligated to consider cited materials but may consider other materials in the record. Id. at 56(c)(3). The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion and Analysis*

1. Mississippi Workers' Compensation Act

The Mississippi Workers' Compensation Act provides, in part, that "[t]he liability of an employer to pay compensation shall be *exclusive* and in place of all other liability of such employer to the employee . . . on account of such injury or death." MISS. CODE ANN. § 71-3-9 (emphasis added). Indeed, "[c]ompensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease." MISS. CODE ANN. § 71-3-7. However, based upon the statutory requirement that the "injury" be "accidental" to be compensable under the Act, see MISS. CODE ANN. §§ 71-3-3(b), 71-3-7, the Mississippi Supreme

Court has found that some intentional torts are outside the scope of the exclusivity provision in Mississippi Code Section 71-3-9. See Royal Oil Co. v. Wells, 500 So. 2d 439, 442 (Miss. 1986) ("the [MWCA] does not bar an employee from pursuing a common law remedy against his employer for an injury caused by his employer's willful and malicious act"); Miller v. McRae's, Inc., 444 So. 2d 368, 371 (Miss. 1984) ("where an injury is caused by the willful act of an employee acting in the course and scope of his employment and in the furtherance of his employer's business, the [Act] is not the exclusive remedy available to the injured party"). "The limitation on the Act's exclusivity 'reflects the public policy that certain courses of conduct (intentional torts) are so shockingly outrageous and beyond the bounds of civilized conduct that the person responsible should not be rewarded with tort immunity.'" Franklin Corp. v. Tedford, 18 So. 3d 215, 221 (Miss. 2009) (quotation omitted).

The Mississippi Supreme Court has repeatedly held that, "in order for a willful tort to be outside the exclusivity of the [MWCA], the employe[r]'s action must be done 'with an actual intent to injure the employee.'" Griffin v. Futorian Corp., 533 So. 2d 461, 464 (Miss. 1988) (quotation omitted). "[A] mere willful and malicious act is insufficient to give rise to the intentional tort exception to the exclusive remedy provisions of the [MWCA] . . . . Reckless or grossly negligent conduct is not enough to remove a claim from the exclusivity of the [MWCA]." Blailock v. O'Bannon, 795 So. 2d 533, 535 (Miss. 2001) (citing Peaster v. David New Drilling Co., 642 So. 2d 344, 348-49 (Miss. 1994)). As recently as 2009, the Mississippi Supreme Court found that "Mississippi is in concurrence with an overwhelming majority of states in requiring an 'actual intent to injure' the employee." Tedford, 18 So. 3d at 221. In sum, for a tort claim against an employer to fall outside the MWCA and survive summary judgment, a plaintiff must allege that the actions of the employer went beyond negligence, gross negligence,

4

or recklessness. In order to succeed on such a claim, the plaintiff must allege and prove that the employer acted with an actual intent to injure the employee, with full knowledge that the employee would be injured and with the purpose of the action being to cause injury to the employee. Bowden v. Young, 2013 Miss. Lexis 459, *10-18 (Miss. Sept. 5, 2013). An examination and comparison of cases in which the actions of the employer were insufficiently intentional to be excepted from Mississippi's workers' compensation system, and those in which the employer's actions were found to be willful and intentional, and thus outside of the MWCA, is instructive.

In Griffin, 533 So. 2d at 463-64, the Mississippi Supreme Court found that a complaint which charged the defendants with "wilfully, consciously and intentionally" ordering an employee to work in conditions that were "substantially certain to cause grievous and horrible injuries" was barred by the exclusivity provision of the MWCA. There, the plaintiff was twice injured by the same piece of machinery in separate incidents, which left him without a right hand or use of his right arm the first time, and without a thumb, index, or middle finger on his left hand the second time. Id. at 462. The court held that it was not enough to allege that the employer had committed "aggravated negligence or even . . . knowingly permit[ted] hazardous conditions to exist or willfully fail[ed] to furnish a safe place to work or knowingly order[ed] the employee to perform a dangerous job." Id. at 464. The plaintiff's employer was, at most, grossly negligent. Therefore, the sole avenue of relief was through workers' compensation.

The Mississippi Supreme Court upheld the lower court's grant of summary judgment in favor of the defendant in Peaster, 642 So. 2d at 344. There, an employee of the defendant was crushed to death by a portable drilling rig which the employer was attempting to move. Id. at 345. The plaintiffs, decedent's wrongful death beneficiaries, alleged that the defendant had

"'willfully' disregarded its duties to [the decedent], 'intentionally' failed to repair the brakes on the tractors and trailers, and acted with 'gross and reckless disregard for the rights and safety of the public in general and particularly of [the] decedent' and with 'knowledge of substantial certainty of injury.'" Id. at 346. Despite the language alleging "intent," the court found that "the overwhelming language and facts point[ed] to negligence, including gross negligence." Id. The court found that "Griffin absolutely bars an intentional tort claim even where the probability of gross negligence exists." Id. at 348. Finding that no evidence established that the defendant actually intended to injure the decedent, and that the defendant was guilty of gross negligence at most, the court upheld the trial court's grant of summary judgment in favor of the defendants. Id. The court also declined to extend the workers' compensation exception to injuries in which the defendant's actions were "substantially certain" to result in injury or death. Id. at 349. The fact that the defendant's conduct was "reckless or grossly negligent" was not enough to remove the case from the coverage of the MWCA. Id. The court concluded that it had consistently stated its position on the issue, which was to refuse to enlarge the scope of the exemption test promulgated by the legislature. Id.

      The Mississippi Court of Appeals addressed the intentional tort exception to the MWCA by explaining the very limited principle that "if the employee is injured by a purposeful and willful act of the employer, the claim is simply not cognizable under workers' compensation law because it did not arise as the result of a work-related accident." Bevis v. Linkous Constr. Co., Inc., 856 So. 2d 535, 543 (Miss. Ct. App. 2003). In that case, the claim of the wrongful death beneficiary of an employee whose fall from a beam was caused by the employer erroneously installing anchor bolts, was dismissed even though evidence showed the employer knew the bolts were improperly repaired. Id. The Court noted that despite the result, the conduct of the

6

employer "cannot be logically described as anything but gross negligence or reckless indifference." Id.

Essentially, the Mississippi Supreme Court has held that if the facts alleged or proven point to negligence, gross negligence, or recklessness, despite an allegation of actual intent, the court should find that workers' compensation is the sole avenue for relief for the aggrieved party. See Peaster, 642 So. 2d at 346.

On the other, hand, the Mississippi Supreme Court has also found a plaintiff's allegations sufficient to escape workers' compensation exclusivity in several cases. In Blailock, 795 So. 2d at 533, the court considered claims of assault, battery, false imprisonment, and intentional infliction of emotional distress brought by an employee after the employee was physically grabbed and pulled by her manager to his office for disciplinary action. Id. at 534. The trial court granted the defendant's motion to dismiss, holding that the employee's remedy lay exclusively under the MWCA. Id. In reversing the trial court's judgment, the court reiterated that only those actions by an employer which occurred with an "actual intent to injure" were sufficient to bring a civil claim outside the exclusivity the MWCA. Id. The Court found that the dismissal was erroneous because the damages suffered by the employee were "caused by willful and intentional acts, not negligent or grossly negligent acts." Id. The manager's act of grabbing the employee was deemed sufficiently willful and intentional to remove the cause of action from the sphere of workers' compensation. Id.

The standards for the extraction of a civil claim from the powerful grasp of the MWCA were reemphasized by the Mississippi Supreme Court in Tedford, 18 So. 3d at 215. There, the defendant employer was a furniture manufacturer. Id. at 222. The plaintiffs included several employees who had worked in the manufacturing plant owned by the defendant, where a

7

pressurized aerosol adhesive had been used to assemble furniture. Id. at 222, 224. Some of the plaintiffs were required to apply the adhesive in small, unventilated wooden booths without respiratory masks or protective equipment. Id. at 224. At one point, two employees were instructed to clean up a spill of 330 gallons of the toxic adhesive without any protective clothing or respiratory equipment. Id. at 226. The defendants were aware that the adhesive was toxic, that prolonged exposure would cause damage to the central nervous system and respiratory system, and that the manufacturer's instructions specifically stated that the spray was to be used only with adequate ventilation. Id. at 222. Nevertheless, the defendants repeatedly and consistently ignored entreaties from employees to install adequate ventilation equipment or provide respiratory and protective gear. Id. at 224. Perhaps most egregiously, after several complaints and a change to the recommended safety parameters of exposure to the adhesive, management specifically instructed other employees to keep all information regarding the adhesive away from the line workers and to remove the safety data sheets, which contained information regarding safe exposure levels, from the adhesive containers. Id. at 226. Eventually, several line workers were hospitalized, many of whom experienced spinal-related injuries, with numbness in their lower extremities. Id. An industrial hygienist testified:

> I can't think of [a plant] that was worse[,] to put . . . a group of individuals, into an enclosed area and spray a solvent day in and day out for hours upon hours . . . without any ventilation, without proper respiratory protection is not only [a] violation of a variety of occupational health standards; but it's just, it's difficult for me to explain why someone would do that, especially in light of the complaints that were coming from those individuals conducting that work.

Id. at 228.

The Mississippi Supreme Court noted that the facts of Tedford demonstrated outrageous actions on the part of an employer who exhibited a profit-motivated disregard for its employees' safety as well as an actual intent to injure. The court affirmed the trial court's decision to deny

the defendant's motion to dismiss because, taking the plaintiffs' allegations as true, they satisfied the intentional-tort exception to the application of the MWCA. Id. at 232. Ultimately, the facts and testimony of the employees showed actual intent to injure on the part of the employers sufficient to overcome the exclusivity provision of the MWCA. However, the court declined to extend the "actual intent" standard to include behavior engaged in by the employer which was "substantially certain to" injure the employees. Id. at 244-45 (Dickinson, J., specially concurring). Six Justices of the Mississippi Supreme Court agreed that, "absent the employer's deliberate intent and design to injure the employee, the law in Mississippi - as it currently exists - does not allow an injured employee to escape the exclusive-remedy provisions of the Act." Id. at 245.

The federal courts of Mississippi, as well as the Fifth Circuit, have weighed in on interpreting the intentional tort exclusion of the MWCA. The Fifth Circuit again addressed the judicially created exception to the exclusive remedy provision of the Mississippi Workers' Compensation Act in Mullins v. Biglane Operating Co., 778 F.2d 277 (5th Cir. 1985). There, the oil well derrick hand slipped and fell seventy-five feet, enduring significant injuries. The Court held that the employee had no cause of action under the exception to the MWCA for willful acts, notwithstanding the allegations that the employer withheld safety equipment, specifically safety belts or lanyards. The Court noted that under the MWCA a "willful act" refers to a "deliberate act that causes the injury of another." Id. at 279. Moreover,

> [the MWCA] requires an act of intentional behavior designed to bring about the injury. An allegation of negligent acts said to have been committed by one's co-employees in the discharge of their job duties will not suffice. Reese v. Liberty Mutual Insurance Co., 473 F. Supp. 456 (N.D. Miss. 1979). Because the legal justification for allowing any common law action against the employer is that the injury is nonaccidental, the common law tort liability should not be stretched to include accidental injuries, even ones which allegedly could have been prevented

9

> through greater diligence and care being taken by the employer. 2A Larson, *The Law of Workmen's Compensation* § 68.13, at 13-8 (1983).

Id. at 279. The Court determined that allowing the plaintiff's claims to go forth would "be to expand the exception created by the Mississippi Supreme Court in Miller [v. McRae's, Inc., 444 So. 2d 368 (Miss. 1984)]. The Court held that because the plaintiff's injury arose in the course and scope of his employment, in performance of his assigned duties, it was of the type contemplated by the MWCA and his common law tort remedy was barred by that Act. Id.

In Huddleston v. Kimberly-Clark Corp., 2002 WL 1611508 (N.D. Miss. July 1, 2002), the plaintiff claimed her medical condition resulted from exposure to various chemicals within the course and scope of her employment with Kimberly-Clark. Plaintiff argued she was exempt from the MWCA because Kimberly-Clark knew it was exposing its employees to the dangerous chemicals and a dangerous work environment without regard to plaintiff's health and safety. Plaintiff further alleged that Kimberly-Clark knowingly engaged in dangerous activity and exposed its employees for the sole purpose of increasing its profits. Id. at *2. The district court held that Plaintiff's "failure to act" claims were actually negligence claims precluded by the MWCA and did not fall under the intentional act exclusion. Id. at *3.

In the case most similar to the case *sub judice,* the district court was concerned with the difference between "occupational disease" and "injury" under the MWCA. Frye v. Airco, Inc., 269 F. Supp. 2d 743 (S.D. Miss. 2003). In Frye, the plaintiff sought recovery for personal injuries alleged to have been sustained as a result of the employee's exposure to vinyl chloride and polyvinyl chloride during his thirty years of employment. Id.at 746. Specifically, plaintiff contended he contracted Raynaud's Syndrome as a result of his exposure at work to vinyl chloride and PVC dust. The district court noted that unlike "injury" as it is defined by the MWCA, "occupational disease" is covered by the Act without reference to the specific manner

in which it was caused. That classification, the court noted, is "subject only to the requirement that 'there is evidence that there is a direct causal connection between the work performed and the occupational disease.'" Id. at 747. The court relied on the Act's express exclusion of "occupation diseases, or the aggravation thereof . . . from the term 'injury.'" Id. (quoting Miss. Code Ann. § 71-3-3(b)). Thus, coverage under the MWCA is not limited to "occupational diseases" that are accidental; therefore, the MWCA was the plaintiff's exclusive remedy for his alleged "occupational disease." Id. The Court further expounded that even if intent were relevant to determine if the "occupational disease" was excluded from the MWCA, the plaintiff failed to suggest there was an actual intent to injury the employee. Indeed, despite plaintiff's pleading of "intentional" misconduct by the defendants, the overwhelming language and facts pointed to negligence and gross negligence. Therefore, claims against the employer defendants were barred by the exclusivity provision of the Workers' Compensation Act. Id. at 748.

The district court in Fulton v. Baxter Healthcare Corp., 2005 WL 3115761 (N.D. Miss. Nov. 21, 2005), likewise found that the plaintiff's allegations that the "[d]efendant knew that the [p]laintiff's work environment was dangerous," did not bring her claims outside the province of workers' compensation. Indeed, the court noted that it is "well-settled in Mississippi that '[i]t is not enough to destroy the [workers' compensation act] immunity that the employer's conduct leading to the injury . . . include[s] such elements as knowingly permitting hazardous conditions to exist or willfully failing to furnish a safe place to work or knowingly ordering the employee to perform a dangerous job.'" Id. at *1 (quoting Peaster v. David New Drilling Co., Inc., 642 So. 2d 344, 347-47 (Miss. 1994); Griffin v. Futorian Corp., 533 So. 2d 461, 464 (Miss. 1988) (citation omitted)).

11

The Court has reviewed the summary judgment evidence and finds that Plaintiff has failed to show any actual intent to harm by B&W. In particular, Plaintiff points to several documents and articles regarding hexavalent chromium from as far back as 1974 to show that B&W had knowledge of the dangers which it was exposing Sisk to, and refused and failed to provide the necessary safety equipment to protect him from the danger with full knowledge that its actions would most likely cause Sisk to develop small cell lung cancer, resulting in his death. Plaintiff asserts, based on affidavits of two Babcock & Wilcox Company employees from North Carolina, that the Babcock & Wilcox Power Generation Group, Inc., and Babcock & Wilcox Company of Scotland are essentially the same entity for purposes of this case. In particular, Jon D. Jediskowski stated, "It is my understanding that Babcock & Wilcox Power Generation Group, Inc., formally known as The Babcock & Wilcox Company, has owned and operated the West Point, Mississippi manufacturing facility since its first commenced operation in 1952." Plaintiff attached two articles authored by David S. Ross, Senior Medical Officer for the Babcock & Wilcox Company in Scotland, in 1974. Those articles discuss the effects of welding on the health of welders, but do not specifically address the connection between hexavalent chromium and small cell lung cancer. Indeed, Plaintiff admits that these articles show "that B&W has for many years been involved in researching welder health and safety issues."

Plaintiff additionally cites to letter penned by O.J. Fischer, Manager of General Technology at B&W Scotland in the late 1970's for his opinions regarding ventilation of welding fumes. Plaintiff states, that based on Fischer's 1984 articles in the Journal of the American Welding Society, "B&W knew the hexavalent chromium (CR-6) was a carcinogen and that it's welders who were welding on stainless steel and Inconel were being exposed to it." Even if the Court were to assume that B&W was a subsidiary of the Babcock & Wilcox Company of

12

Scotland, the articles fail to show an actual intent to injure employees exposed to welding fumes. Although the articles do indicate that employees of the Babcock & Wilcox Company of Scotland knew of some risks attendant with welding, such knowledge does not rise to the equivalent of an intent to injure.[1]

Plaintiff also brought forth deposition testimony that it contends evidences B&W's intent with respect to its welding employees. Robert Shaffer, President of the Mississippi AFL-CIO and former B&W employee for thirty-two years, testified that as a union steward, he filed an OSHA complaint on the conditions of welding in the cyclone area where Inconel was being welded. He described that area as "confined" with low ventilation. Shaffer contends that the welders were complaining of sore throats, and he "went to the company" and threatened to file an OSHA complaint if something was not done. Shaffer contends that B&W's response was to buy fans from Wal-Mart in an attempt to ventilate the area. He also noted that dusk masks were available for workers in the welding areas but respirators had to be requisitioned by a supervisor. He stated, "I don't know if anybody ever [got] turned down for anything out there as it relates to safety, but it had to go through a process to get it." Shaffer stated that while he was employed at B&W, until 2001, he was not aware of any policy in place requiring welders to wear respirators,

---

[1] As noted by Dean Prosser,

> "'[T]he mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief of consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but is not classed as an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a certainty.'"

Prosser, Law of Torts, 4th Ed. 1971, 32.

but did acknowledge that respirators were available for use. Moreover, he was not aware of any grievances filed with the Union regarding the lack of respirators or ventilation in the welding area from 1989 through 2001. He additionally testified that the B&W plant was constructed with thirty foot high ceilings equipped with exhaust fans in the welding areas. Shaffer testified that B&W's environmental engineer, Norice Dean Nash, did "a lot of air sampling . . . ," and B&W held welder-specific safety meetings every Monday morning.

Ricky Collins was a safety administrator for B&W, a position in which he performed routine safety inspections. He indicated that respirators were part of his duties and acknowledged that B&W employed someone to test the fit of respirators at the workplace. Collins further testified regarding B&W's efforts to comply with OSHA guidance on hexavalent chromium. Indeed, he noted that B&W instituted a policy requiring all welders of stainless steel materials and Inconel to wear a respirator. B&W adopted a Respiratory Protection Program for welders at least by 2006 informing employees of the availability of respirators and instructing them on general use and maintenance of the respirators. There was a PowerPoint on hexavalent chromium awareness produced out of corporate, but Collins was unable to unequivocally state that the PowerPoint was shown to employees.

Plaintiff also attached Norice Dean Nash's deposition. Nash was the environmental engineer at B&W in West Point for almost twenty years. Nash testified that in her position, anytime new material came in, she would review the Material Safety Data Sheets to see the permissible exposure limits set by OSHA, would conduct sampling, and run the samples on those materials. Nash also personally handled the air sampling from 1992 until 2005 when B&W brought on an industrial hygienist. B&W supplemented the record with records of Norice Nash's submission of air samples to a testing lab which shows B&W actively tested for

chromium since 1992. Nash testified that Sisk should have known what hexavalent chromium was and its effects because training was conducted on those topics.

Gail Stevens, the human resource and labor relations manager, testified that B&W adhered to a respirator policy which required welders to wear a fit-tested respirator. Stevens noted that failing to wear a respirator would constitute a work violation. B&W kept records of all work violations, and Jimmy Sisk never received a safety-related work violation. Plaintiff also attached a Respirator Record for Jimmy Sisk that indicates he was indeed fit-tested periodically for a respirator from May 26, 2004 through October of 2005. Sisk's OSHA Respirator Medical Evaluation Questionnaire is also attached evidencing that as of April 11, 2000, Sisk claims to be using a respirator while welding less than five hours per week with no respiratory illness symptoms.

Richard Simmons, industrial hygienist for corporate, conducted exposure tests prior to the implementation of OSHA's maximum exposure level for hexavalent chromium went into effect. While Sisk was not specifically tested for exposure, Simmons testified that those he felt would be most exposed were tested in order to ensure that any safety measures would protect all employees.

Plaintiff claims that all these facts add up to reveal that B&W actually intended to injure its welders by exposing them to hexavalent chromium. The Court finds this contention without merit. Without weighing the credibility of the evidence presented, the Court finds no genuine dispute of material fact that B&W's conduct constituted an actual intent to injure. During the time of Sisk's employment, B&W offered respirators for its welders, continually sampled the air to comply with the higher scrutiny exposure levels of the American Conference of Governmental Industrial Hygienists as opposed to the lower base line exposure levels of OSHA. Testimony

reveals that B&W never refused to provide safety equipment to its employees when asked and willfully provided access to such equipment. Plaintiff argues that testimony regarding B&W's failure to turn on exhaust fans during the winter as those fans would pull the heat out of the building indicates their intent to harm. However, several former employees testified that the fans were not turned on in order to keep the workers warm during the colder weather. At least one former employee testified that if the workers complained about the air quality, however, B&W would open the exhaust fans. The failure of B&W to keep its exhaust fans running despite cold weather does not evidence intent to cause its employees to develop lung cancer.

Based on the case law cited finding an actual intent to injure, the Court finds that Plaintiff has failed to support its contention that B&W's actions with regard to hexavalent chromium strips it of the immunity provided by the MWCA. No genuine dispute of material fact is presented that B&W actually intended to injure Sisk by exposing him to hexavalent chromium. The Court finds B&W's culpability to rise, at most, to gross negligence. Plaintiff is therefore barred by the Act from pursuing this tort remedy against the Defendant employer. Accordingly, the MWCA precludes Plaintiff's claims, and this case shall be dismissed.

  2. <u>Statute of Limitations</u>

Alternatively, Defendant seeks dismissal of Plaintiff's action due to the lapse of the statute of limitations if the Court were to determine B&W's actions constituted intentional torts. Mississippi Code Section 15-1-35 provides:

> All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.

This statutory provision has been interpreted to encompass other intentional acts that are substantially similar to the causes of action enumerated therein. See <u>Childers v. Beaver Dam</u>

Plantation, Inc., 360 F. Supp. 331, 334 (N.D. Miss. 1973). Moreover, courts are not bound to accept a plaintiff's style of the cause of action and may look to the "essence of the action" to determine whether Mississippi's one-year statute of limitations applies. Id.; see also Lynch v. Liberty Mut. Ins. Co., 909 So. 2d 1289, 1292 (Miss. Ct. App. 2005).

To the extent that Plaintiff alleges that B&W created hazardous conditions calculated to cause him injury or failed to provide respirators with intent to cause him harm, such allegations are in essence causes of action of assault and battery, each of which must be brought within a year of when the cause of action accrued. See McGee v. Willbros Constr., 2011 WL 6781434 (S.D. Miss. Dec. 27, 2011) (holding that, to the extent the complaint alleged that the employer intentionally put the employee in a situation likely to cause harm, the action was subject to the one-year statute of limitations of Mississippi Code Section 15-1-35); Howard v. Wilson, 62 So. 3d 955, 957 (Miss. 2011) (stating that "[a]n assault occurs when a person '(1) acts intending to cause a harmful or offensive conduct with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other person is thereby put in such imminent apprehension . . . . A battery goes one step beyond an assault in that a harmful contact actually occurs.'" (citation omitted)).

Plaintiff argues that a three year statute of limitations should apply for the wrongful death claim. However, the statute of limitations applicable to wrongful death actions derive from the underlying tort. Empire Abrasive Equip. Corp v. Morgan, 87 So. 3d 455, 462 (Miss. 2012) ("wrongful death actions are predicated on an underlying tort, and that action is limited by the statute of limitations which is applicable to that tort"); Caves v. Yarbrough, 991 So. 2d 142, 150 (Miss. 2008) (noting that various claims that may be brought in a wrongful death case are all subject to their own statutes of limitations). Because, as noted above, the underlying tort is in

17

essence an assault and battery claim, the statute of limitations is one year. Plaintiff initiated this suit three years after Sisk's cancer diagnosis and more than two years after his death. Therefore, the Court finds that any allegations suggesting that B&W engaged in conduct with the intent to cause Sisk physical harm are barred by Mississippi Code Section 15-1-35.

*Conclusion*

Plaintiff's allegations are covered by the MWCA. Plaintiff has failed to show that B&W's conduct rises to the level necessary to push this claim outside the parameters of the MWCA. As noted by the Fifth Circuit, the policy of the MWCA is to "provide scheduled compensation for job-related injuries in exchange for withdrawing all other remedies for them." Williams v. Munford, Inc., 683 F.2d 938, 940 (5th Cir.1982). This Court rejects such an attempt to "endrun the compensation system" established by the Mississippi Legislature. Id.

Even were the Court to find the allegations to be more than negligence or gross negligence such that the MWCA exclusion would apply, those claims would be barred by the one year statute of limitations found in Mississippi Code Section 15-1-35.

Accordingly, Defendant's Motion for Summary Judgment [70] is GRANTED. Plaintiff's claims are DISMISSED, and this case is CLOSED.

SO ORDERED, this the 17th day of October, 2013.

                                                 **/s/ Sharion Aycock**
                                                 **U.S. DISTRICT JUDGE**